IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ROGER JOHNSON (# 59930)**     **PLAINTIFF**

**v.**     **No. 4:08CV24-P-A**

**CAPTAIN ROGER LEWIS, ET AL.**     **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Roger Johnson, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. For the reasons set forth below, the instant case shall be dismissed for failure to state a claim upon which relief could be granted.

### Factual Allegations

On June 26, 2007, in Unit 32-B at the Mississippi State Penitentiary, the plaintiff discovered that the prison authorities were to conduct a shakedown the next day. The plaintiff was aware that he had accumulated more than the amount of legal mail, magazines, and other papers permitted under prison rules. He informed defendant Captain Lewis ("Lewis") that he would like to send his excess papers to storage, and Lewis assured him that his papers would be safe. Despite these assurances, during the shakedown of June 27, 2007, the inmates on the tier were taken to the recreation yard, and the prison guards threw away the plaintiff's excess magazines and placed his legal papers in a garbage bag with his name on it. The plaintiff became angry because Lewis did not prevent the disposal of the plaintiff's magazines as he said he would. The plaintiff told the guards on the recreation yard that he would not leave the yard until he spoke with Captain Lewis. A guard told the plaintiff that he would see Captain Lewis

on the way back to his cell. The plaintiff left his legal papers in the recreation yard and, on his way inside, told Captain Lewis to retrieve the legal work and deliver it to him. Lewis said he would do so. After a couple of hours the plaintiff began to worry about his legal papers. Then a corrections officer told him that Lewis was not coming to see him. The plaintiff waited awhile longer, then began "beating on the tin" with his cup.[1] He continued beating on the tin for three hours straight. The plaintiff then noticed that Captain Lewis was speaking with an inmate a few cells down, and the plaintiff called him. Lewis ignored him. The plaintiff beat the tin again, and Lewis came to the gate. The plaintiff said he needed to talk to Lewis, who just walked away. The plaintiff beat the tin again. Lewis returned, told the plaintiff, "Stop beating on the tin or I'm going to spray you," and again walked away. Despite the warning, the plaintiff beat the tin again. Lewis ordered the tower officer to open the gate, and, as he approached, the plaintiff stopped beating on the tin and pulled his cup in the bars. Lewis arrived at the plaintiff's cell, sprayed him in the face with chemical agent, and left. The chemical caused a powerful burning sensation in the plaintiff's eyes and on his skin. He used water from his sink to wash the chemical from his face, but the burning persisted. He stripped down to his skin and used water from his toilet to wash the agent from his skin, but the burning sensation continued. He had trouble breathing. A nurse arrived to examine and treat the plaintiff, but he would not come to his cell door. He alleges that the chemical agent on the door caused additional discomfort and difficulty breathing. Instead, the plaintiff chose to stay in his cell and continue rinsing away the chemical agent with water from the toilet. He alleges that the burning sensation persisted for

---

[1] In prison parlance, "beating on the tin" means banging loudly on the bars or door of a cell.

several days.

On June 29, 2007, the plaintiff received his legal papers in the bag from the shakedown. The bag had, however, burst open, and the plaintiff's trial transcript and some other papers were missing. That same day, Captain Davenport entered the tier, and the plaintiff told him of the incident. The plaintiff complained about Captain Lewis' conduct and stated that he never even received a Rule Violation Report for the incident. Davenport told the plaintiff that Captain Lewis made an error in failing to charge the plaintiff with a rule infraction because an infraction serious enough to warrant use of chemical agent warrants a rule violation report. On July 3, 2007, the plaintiff received the Rule Violation Report, which indicated that he had refused to sign it and had been found guilty of the rule infraction (refusing to obey the order of a staff member). The plaintiff alleges that he never saw the Rule Violation Report until July 3, 2007, and thus could not have refused to sign it. As punishment, the plaintiff lost thirty days canteen privileges and could not write home for thirty days. As a result of his missing legal materials, the plaintiff had to prepare and submit *habeas corpus* briefs and other pleadings without benefit of his legal papers.

### The Plaintiff's Claims

The plaintiff alleges four claims in the instant complaint: (1) excessive force (use of the chemical agent), (2) denial of medical care after use of the chemical agent, (3) denial of access to the courts due to loss of various legal papers, and (4) denial of due process regarding the Rule Violation Report. As discussed below, each allegation fails to state a constitutional claim.

**Excessive Force**

The plaintiff alleges that Captain Lewis used excessive force against him in violation of the Eighth Amendment prohibition against cruel and unusual punishment. In reviewing such a claim, the court must balance the constitutional rights of convicted prisoners with the needs of prison officials to use force effectively to maintain prison order. To state a claim of excessive force, the plaintiff must allege that the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Although this is not an exhaustive list, the court may consider "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and, (5) any efforts made to temper the severity of the forceful response." *Rankin*, 5 F.3d at 107 n.5 (citation omitted).

A prisoner need not prove "significant" or "serious injury" in order to prevail in an Eighth Amendment claim of excessive force. *Hudson*, 503 U.S. at 7. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* A *de minimis* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force

is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation omitted). The plaintiff must, however, prove some injury. *Rankin*, 5 F.3d at 108; *see also Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S. Ct. 1298, 122 L. Ed. 2d 688 (1993). A single incident of force or a single blow is *de minimis* and thus does not violate the Eighth Amendment. *Jackson v. Culbertson*, 984 F. 2d 699, 700 (5th 1993).

First, the force Captain Lewis used – a single spray of chemical agent after issuing a clear warning – was clearly "a good-faith effort to maintain or restore discipline," and not applied "maliciously and sadistically to cause harm." *Hudson* 503 U.S. at 6-7. The plaintiff, who was at the time housed in the state's maximum security unit, had been causing a very loud disturbance by beating on the tin *for three straight hours*. Such a ruckus would certainly disrupt the orderly running of a penal institution – or any other institution for that matter. Lewis had tried simply ignoring the plaintiff's antics – to no avail. The plaintiff just resumed beating on the tin each time Lewis left the area. After the third time, Lewis warned the plaintiff that if he beat on the tin again, he would be sprayed with chemical agent. The plaintiff nonetheless beat on the tin for the fourth time, and Lewis returned, chemical agent in hand. The plaintiff pulled his arms and cup (his tool for maximizing the noise from beating on the tin) inside the bars only after having been warned of the consequences of further disturbances. Lewis sprayed the plaintiff in the face a single time – then left. The plaintiff washed off the chemical with water – and declined treatment by the nurse. This set of facts does not state a constitutional claim.

The plaintiff suffered pain and discomfort only – not a physical injury. As such the first element under *Rankin* weighs against a finding of excessive force. Likewise, Lewis tried to ignore the plaintiff's noisemaking, but the plaintiff had been beating on the tin for over three

hours. Loud noises and other disturbances in the maximum security unit of a prison disrupt its orderly running and can cause agitated behavior in other prisoners – leading to security problems. The court thus finds that some measure of force was warranted to stop the plaintiff from causing the disturbance. Indeed, as the plaintiff had been beating on the tin for over three hours, it appears unlikely that any lesser measure would have convinced him to stop. Thus, as to the second and third *Rankin* factors, the court finds that there was a need to apply force (chemical agent), and that the force used was in rational proportion to the need. Both of these factors weigh against a finding of excessive force. As to the threat Lewis might reasonably have perceived, Unit 32, Mississippi's maximum security unit, houses inmates with severe discipline problems, gang members, and others who pose a grave threat to security. Over the past several years inmates have doused guards and inmates alike with scalding liquids, urine, and feces. Numerous stabbing attacks have also occurred in Unit 32 in recent years. The prison therefore has a powerful interest in quelling loud disturbances in Unit 32. This factor also weighs against a finding that the force used against the plaintiff was excessive. The final explicit *Rankin* factor is consideration of the efforts Lewis took to temper the severity of his use of force. As noted above, Lewis repeatedly tried to ignore the plaintiff's banging noises. When that did not work, he warned the plaintiff that further disturbances would result in chemical spray. When a warning did not work, he sprayed the plaintiff a single time – then left. The plaintiff had water to wash off the spray, and a nurse came to check on the plaintiff. Thus, Lewis progressed from taking no action – to a warning – to use of a single spray. Lewis meted out the force used against the plaintiff at the minimum level required to gain his compliance – then stopped and ensured that the plaintiff received medical attention. This factor also weighs against a finding of excessive

force.

A factor not mentioned in *Rankin*, but nonetheless salient to the plaintiff's claim of excessive force is the fact that the plaintiff himself is largely to blame for the sequence of events leading to his experience with the chemical agent. The plaintiff did not ensure that he maintained the proper amount of papers and legal material in his cell until the day prior to a shakedown. Then, he expected the prison staff (starting with Captain Lewis) to rectify this deficiency quickly so that the plaintiff could avoid its consequences. When the plaintiff's accumulation of excessive paper led to its confiscation, he refused to return to his cell from the recreation yard – and demanded to speak with Captain Lewis. When he did speak with Captain Lewis, he directed Lewis to retrieve the plaintiff's legal materials from the recreation yard. Then, when the plaintiff did not receive his legal materials right away, he beat on his cell door with a cup for hours on end in an attempt to force a conversation with Lewis. When Lewis finally warned the plaintiff that further beating on the tin would result in being sprayed with chemical agent, the plaintiff beat on the tin again – and Lewis sprayed him as he said he would. The plaintiff could thus have avoided the confiscation of his papers by taking action to have them removed from his cell at an earlier date. He could have avoided being sprayed with chemical agent by choosing not to beat on his cell door for hours on end – or at least heeding the warning Lewis gave him prior to spraying him. He could have received medical attention and perhaps had an easier time cleaning up if he had cooperated with the nurse who came to examine and treat him. Put simply, the plaintiff could have avoided all of the consequences of which he complains by complying with the rules and procedures of the prison. In sum, all of the enumerated *Rankin* factors – and the additional factor discussed above – weigh against a finding

of excessive force, and the court thus finds that Lewis did not use excessive force against the plaintiff.

## Denial of Medical Treatment

The plaintiff also claims that he was denied medical care after Captain Lewis sprayed him with chemical agent. The plaintiff's own allegations, however, disprove this claim. Shortly after the plaintiff was sprayed and had been washing himself up with water, a nurse arrived to examine and treat him. The plaintiff would not, however, approach the cell door. Whether the plaintiff declined to approach the door because of the presence of chemical agent on it – or for some other reason – is irrelevant. A member of medical staff arrived to help him, and he did not make himself available to receive that help. This set of facts does *not* demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L.Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). Likewise, neither Lewis nor the nurse demonstrated "subjective recklessness as used in the criminal law," as the facts alleged show that neither "[knew] of and disregard[ed] an excessive risk to inmate health or safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837-383 (1994). Lewis sprayed the plaintiff with chemical agent. The plaintiff immediately began washing himself with water, and a nurse arrived to treat him shortly thereafter. The plaintiff suffered no injury from the chemical agent. This set of facts fails to state a constitutional claim for deliberate indifference to the plaintiff's serious medical needs. As such, it shall be dismissed.

## Denial of Access to the Courts

The plaintiff argues that Captain Lewis should have taken immediate action to ensure that the plaintiff's excess magazines and other papers were taken to storage prior to the Unit 32 shakedown – and that Lewis' failure to do so caused the plaintiff to lose various legal papers for the plaintiff to pursue a federal petition for a writ of *habeas corpus*. Prisoners possess a constitutional right of access to courts, including having the "ability . . . to prepare and transmit a necessary legal document to court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994)). The right of access to the courts is limited to allow prisoners opportunity to file nonfrivolous claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations omitted). However, such a "claim is not valid if a litigant's position is not prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), *cert. denied,* 504 U.S. 988 (1992) (citing *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988)). It is only when a prisoner suffers some sort of *actual prejudice or detriment* because of the alleged denial of access that the allegation becomes one of a constitutional nature. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). A plaintiff must show real detriment – true denial of access – such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding. *Oaks v. Wainwright*, 430 F.2d 241 (5th Cir.

1970). In this case, the plaintiff has not alleged that he has lost any right at all. He alleges only that he had to prepare a brief without the benefit of the papers lost during the course of the shakedown – not that he was denied the opportunity to file his brief. He apparently did not seek a continuance to obtain other copies of the lost papers – or otherwise try to remedy the problem. As he has not alleged a real detriment to his legal position, he has not stated a viable claim of denial of access to the courts. This allegation shall therefore be dismissed.

## Denial of Due Process

The plaintiff alleges that he was accused and found guilty of a rule infraction without the opportunity to refute the charges in violation of his right to Due Process. The plaintiff has, however, admitted in his pleadings submitted to this court that he committed the rule infraction (failure to obey the order of a staff member). As such, this is not a case where the defendants "framed" the plaintiff. He was punished with thirty days loss of canteen privileges and thirty days mail restriction. These allegations do not set forth a claim which implicates the Due Process Clause or any other constitutional protection. *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). "States may under certain circumstances create liberty interests which are protected by the Due Process Clause [, but] these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* 115 S. Ct. at 2300 (citations omitted). In the *Sandin* case, the discipline administered the prisoner was confinement in isolation. Because this discipline fell "within the expected parameters of the sentence imposed by a court of law," *id*. at 2301, and "did not present

the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," *id.*, the Court held that neither the Due Process Clause itself nor State law or regulations afforded a protected liberty interest that would entitle the prisoner to the procedural protections set forth by the Court in *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935 (1974). *See also Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

The plaintiff in this case received a lesser punishment than the plaintiff in *Sandin*, which the Supreme Court held to be insufficient to support a claim for denial of due process. Loss of commissary privileges and mail restriction are punishments that fall "within the expected parameters of the sentence imposed by a court of law;" as such, the plaintiff's claim that the defendants violated his right to due process shall be dismissed.

In sum, all of the plaintiff's allegations shall be dismissed for failure to state a claim upon which relief could be granted. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 19th day of June, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE